# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CEDAR RAPIDS DIVISION

SHIRLEY RAE COWLES,

        Plaintiff,

vs.

CAROLYN W. COLVIN, Commissioner
of Social Security,

        Defendant.

No. C14-53-LTS

**MEMORANDUM OPINION
AND ORDER**

———————————

Plaintiff Shirley Rae Cowles seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for Social Security Disability benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.* (Act). Cowles contends that the administrative record (AR) does not contain substantial evidence to support the Commissioner's decisions that she was not disabled during the relevant period. For the reasons that follow, the Commissioner's decision is affirmed.

## I.    BACKGROUND

Cowles was born in 1955 and has a bachelor's degree. AR 56, 144. She has past relevant work as a waitress. AR 42, 281. She filed an application for DIB on August 25, 2009, alleging a disability onset date of September 19, 2006. AR 35, 144-45. She alleged disability due to arthritis, sinusitis, migraines, thyroid cancer, chronic back pain and numbness and tingling in her left calf and foot. AR 190. The application was initially denied on February 18, 2010, and again on reconsideration on April 6, 2010. AR 35. Cowles then requested a hearing before an Administrative Law Judge (ALJ) and on

August 5, 2011, ALJ Eric Basse held a hearing during which Cowles and a vocational expert (VE) testified. AR 35, 49-93. On October 14, 2011, the ALJ issued a decision denying Cowles' claim. AR 34-42. Cowles then sought review by the Appeals Council. The Appeals Council granted the request for review but ultimately adopted the ALJ's findings and conclusions as to whether Cowles was disabled.[1] AR 18-21. The Appeals Council's decision became the final decision of the Commissioner. AR 15; 20 C.F.R. § 404.981.

On April 23, 2014, Cowles filed a complaint (Doc. No. 1) in this court seeking review of the Commissioner's decision. On June 19, 2014, with the consent of the parties (Doc. No. 7), the Honorable Linda R. Reade transferred this case to Chief Magistrate Judge Jon S. Scoles for final disposition and entry of judgment. On January 12, 2015, the case was reassigned to me. The parties have briefed the issues and the matter is now fully submitted.

## II.    DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); *accord* 20 C.F.R. § 404.1505. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A).

---

[1] The Appeals Council corrected an error by the ALJ concerning the date Cowles was last insured. AR 19-20. This correction had no impact on the outcome of the case. AR 20-21.

To determine whether a claimant has a disability within the meaning of the Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. § 404.1520; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* § 404.1521(b)(1)-(6); *see also Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R.

§§ 404.1520(a)(4)(iii), 404.1520(d); *see also Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see also* 20 C.F.R. § 404.1545(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 404.1545(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must show not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 404.1520(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the

national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(v). At Step Five, while the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

## III. ALJ'S FINDINGS

The ALJ made the following findings[2]:

(1) The claimant meets the insured status requirements of the Social Security Act through March 31, 2011.

(2) The claimant did not engage in substantial gainful activity during the period from her alleged onset date of September 19, 2006 through her date last insured of March 31, 2011 (20 CFR 404.1571 *et seq.*).

(3) Through the date last insured, the claimant had the following severe impairments: degenerative disk disease; myofascial pain; and status post thyroidectomy and ablation (20 CFR 404.1520(c)).

(4) Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

(5) After careful consideration of the entire record, the undersigned finds that through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can lift and carry 20 pounds occasionally and ten pounds frequently. She can stand and walk six hours out of an eight-hour day.

---

[2] As noted above, the Appeals Council adopted these findings with the exception of the last-insured date, which was changed from March 31, 2011, to June 30, 2011. AR 19-20.

She can sit six hours out of an eight-hour day. She can occasionally climb, balance, stoop, crouch and crawl.

(6)     Through the date last insured, the claimant was capable of performing past relevant work as an informal waitress. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

(7)     The claimant was not under a disability, as defined in the Social Security Act, at any time from September 19, 2006, the alleged onset date, through March 31, 2011, the date last insured (20 CFR 404.1520(f)).

AR 10-21.

## IV.     THE SUBSTANITAL EVIDENCE STANDARD

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645. The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Wester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search

6

the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## V.    DISCUSSION

Cowles raises the following arguments in contending that the ALJ's decision is not supported by substantial evidence:

> (1)    The ALJ erred by determining that various impairments were not severe.
>
> (2)    The ALJ erred in determining Cowles' RFC.

   (3) The ALJ erred by considering Cowles' waitressing work as substantial gainful employment and, therefore, in determining it to be past relevant work.

I will address these arguments separately.

## 1. Severe Impairments

### A. Applicable Standards

At Step Two, the ALJ must consider whether a medically determinable impairment is "severe." 20 C.F.R. § 404.1520(a)(4)(ii). A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Basic work activities include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; capacities for seeing, hearing and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b). If the impairment would have no more than a minimal effect on the claimant's ability to work, it is not severe. *Page*, 484 F.3d at 1043.

When a claimant has multiple impairments, "the Social Security Act requires the Commissioner to consider the combined effect of all impairments without regard to whether any such impairment, if considered separately, would be of sufficient medical severity to be disabling." *Cunningham v. Apfel*, 222 F.3d 496, 501 (8th Cir. 2000); *see also* 20 C.F.R. § 404.1523. It is the claimant's burden to establish that his or her impairment or combination of impairments is severe. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000). "Severity is not an onerous requirement for the claimant to meet, but it is also not a toothless standard . . . ." *Kirby*, 500 F.3d at 708 (internal citation omitted).

In determining the severity of a medically determinable impairment, the ALJ must consider a claimant's symptom-related limitations and make a credibility finding on his or her alleged limitations. *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001) (the ALJ erred at Step Two by failing to evaluate the claimant's subjective complaints); *see also* SSR 96-7p, 1996 WL 374186 (July 2, 1996). While the ALJ may conclude that the medical evidence does not support a claimant's subjective allegations, this is only one factor that should be considered. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984) ("The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints."). The ALJ is required to explicitly discredit a claimant and provide reasons. *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007) ("[A]n ALJ who rejects such [subjective] complaints must make an express credibility determination explaining the reasons for discrediting the complaints").

### B.      Analysis

Cowles argues the ALJ erred in finding that certain of her impairments were not severe, including: (a) sleep apnea, (b) left elbow epicondylitis, (c) migraines, (d) sinus infections and (e) arthritis. I disagree. The ALJ provided detailed reasons for his findings. He noted that these impairments responded favorably to treatment and medication and that Cowles continued to work for many years despite the impairments, meaning they had "no more than a minimal effect" on her ability to work:

> The claimant was diagnosed with sleep apnea, left elbow epicondylitis, migraines, sinus infections and arthritis. <u>The undersigned has determined these impairments are non-severe impairments as they produce only minimal functional limitations.</u> The claimant was <u>diagnosed with only mild sleep apnea</u> when lying supine. The claimant was diagnosed with left elbow epicondylitis and was provided an injection. <u>Treatment records indicated after prescription medications and injection the claimant had a "good" recovery" and full range of motion in the hands and fingers.</u>

> Additionally, the claimant testified that her migraines were related to sinus infections and waxed and waned. <u>Ms. Cowles's sinus infections and migraines were addressed with sinusotomy and ethmoidectomy in January 2008, and other [sic] treatable with medications</u> and the claimant indicated that she was able to work despite headaches and sinus infections. (Exhibits 5F, 10F, 11F, 26F) Interestingly, she indicated her migraines were mainly at night and linked to sleeping in a supine position. <u>She was much better in a different sleeping position, and her headaches resolved with Maxalt</u>. (Exhibit 22F) It is noted that the claimant had sinus difficulty for many years, which did not preclude working. (Exhibit 21F)

AR 37-38 [emphasis added].

The record confirms that the impairments at issue were effectively treated with medications and treatment plans, thereby supporting the ALJ's conclusion that they were not severe. *See, e.g., Nguyen v. Chater,* 75 F.3d 429, 431 (8th Cir. 1996) (impairment is not severe if medication improves it sufficiently to enable the claimant to undertake daily activities incompatible with disablement); *see also* 20 C.F.R. § 404.1521(a) (impairment "is not severe if it does not significantly limit your physical or mental ability to do basic work activities"). With regard to sleep apnea, a sleep study in March 2007 found that Cowles had no significant apnea. AR 400, 640. In March 2008, treatment notes indicate she was sleeping well at night and her provider recommended discontinuing sleep medication. AR 452. In June 2011, Cowles was diagnosed with mild sleep apnea, but only when in the supine position. AR 824. The only treatment plan suggested was to change her sleeping position. *Id.*

As for her left elbow, on July 18, 2007, an examination and x-ray showed no significant structural issues. AR 496, 498. Epicondylitis was treated with an injection on July 18, 2007, and over the course of the next two and one-half years various providers reported that she had full range of motion. AR 496, 515, 646-48.

With regards to arthritis, in October and December 2008 and January 2009, physical exams indicated no inflammatory arthritis causing symptoms. AR 393, 394, 400, 467, 527. In February and March 2009, Cowles began a new course of medication

treatment for arthritis, which she stated was "doing very well for her hands and feet, and arthritis type pain."  AR 469, 529.

Nor does the record suggest that sinus infections and migraine headaches had more than a minimal effect on Cowles' ability to work.  She testified that migraine headaches were triggered by sinus infections.  AR 76.  She underwent a successful sinusotomy and ethmoidectomy in 2008 and was "pleased" with the results.  AR 326, 375-78.  In June 2010, her chronic sinusitis was improved, she was feeling much better and medications were controlling her sinus symptoms.  AR 675.  Likewise, Cowles continued to have headaches in 2011 but they were effectively treated with medication.  AR 684, 686.  Cowles' provider noted that only "once in a while she will require a shot" to relieve migraine symptoms.  AR 686.

Under the standard by which I must review the record, the medical evidence substantially supports the ALJ's decision.  The ALJ pointed to specific portions of the record showing that the impairments at issue had no more than a minimal effect on Cowles' ability to work.  While there is contradictory evidence in the record, such as Cowles' subjective complaints, that could support the opposite conclusion, it is not this court's task to re-weigh the evidence.  The ALJ's Step Two findings concerning the severity of various impairments are affirmed.

## 2.    *Evaluation of the Medical Evidence When Calculating the RFC*

### A.    *Applicable Standards*

The claimant's RFC is "what [the claimant] can still do" despite his or her "physical or mental limitations."  20 C.F.R. § 404.1545(a)(1).  "The ALJ must determine a claimant's RFC based on all of the relevant evidence."  *Fredrickson v. Barnhart*, 359 F.3d 972, 976 (8th Cir. 2004).  The claimant's RFC "is a medical question," *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001), and must be supported by "some medical evidence."  *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam).  The medical

evidence should address the claimant's "ability to function in the workplace." *Lewis*, 353 F.3d at 646. The RFC determination is not based exclusively on the medical evidence, or on any one physician's opinion, but on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007). While the RFC assessment draws from medical sources, it is ultimately an administrative determination reserved to the Commissioner. *Id.*

"An ALJ must not substitute his opinions for those of the physician." *Finch*, 547 F.3d at 938 (quoting *Ness v. Sullivan*, 904 F.2d 432, 435 (8th Cir. 1990)). Rather, "it is the ALJ's responsibility to determine [the] claimant's RFC based on all the relevant evidence, including medical records, observations of treating physicians and others, and claimant's own description of her limitations." *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (citing *Page*, 484 F.3d at 1043). "It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government if they are inconsistent with the record as a whole." *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001). "An ALJ's failure to consider or discuss a treating physician's opinion that a claimant is disabled is error when the record contains no contradictory medical opinion." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (citing *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)). The ALJ is not required to mechanically list and reject every possible limitation. *McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011). Furthermore, "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010) (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)).

*Acceptable Medical Source Opinions.* Medical opinions can come from a treating source, an examining source or a non-treating, non-examining source (typically a state agency medical consultant who issues an opinion based on a review of medical records). Medical opinions from treating physicians are entitled to substantial weight. *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000). A treating physician's opinion "does not

12

automatically control or obviate the need to evaluate the record as [a] whole." *Leckenby v. Astrue*, 487 F.3d 626, 632 (8th Cir. 2007). Nonetheless, if the ALJ finds that a treating physician's medical opinion as to the nature and severity of the claimant's impairment is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] record, [the ALJ] will give it controlling weight." 20 C.F.R. § 416.927(c)(2). "When an ALJ discounts a treating physician's opinion, he should give good reasons for doing so." *Brown v. Astrue*, 611 F.3d 941, 951-52 (8th Cir. 2010). Note, however, that a treating physician's conclusion that an applicant is "disabled" or "unable to work" addresses an issue that is reserved for the Commissioner and therefore is not a "medical opinion" that must be given controlling weight. *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005).

At the other end of the medical-opinion spectrum are opinions from non-treating, non-examining sources: "The opinions of non-treating practitioners who have attempted to evaluate the claimant without examination do not normally constitute substantial evidence on the record as a whole." *Shontos v. Barnhart*, 328 F.3d 418, 427 (8th Cir. 2003). This does not mean, however, that such opinions are to be disregarded. Indeed, "an ALJ may credit other medical evaluations over that of the treating physician when such other assessments are supported by better or more thorough medical evidence." *Prosch v. Apfel*, 201 F.3d 1010, 1014 (8th Cir. 2000) (internal quotations and citations omitted). Unless a treating source's opinion is given controlling weight, the ALJ "must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant." 20 C.F.R. § 416.927(e)(2)(ii).

In the middle of the spectrum are opinions from consultative examiners who are not treating sources but who examined the claimant for purposes of forming a medical opinion. Normally, the opinion of a one-time consultative examiner will not constitute substantial evidence, especially when contradicted by a treating physician's opinion. *Cantrell v. Apfel*, 231 F.3d 1104, 1107 (8th Cir. 2000).

Ultimately, it is the ALJ's duty to assess all medical opinions and determine the weight to be given these opinions. *See Finch*, 547 F.3d at 936 ("The ALJ is charged with the responsibility of resolving conflicts among medical opinions."); *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002) ("It is the ALJ's function to resolve conflicts among 'the various treating and examining physicians.'") (citing *Bentley v. Shalala*, 52 F.3d 784, 785-87 (8th Cir. 1995)).

***Other Opinion Evidence.*** Opinion evidence may also come from health care providers who do not fall within the Commissioner's definition of an "acceptable medical source," such as nurse practitioners and physical therapists.[3] Social Security Ruling 06-03p nonetheless requires the ALJ to give consideration to such opinions. That ruling includes the following statements:

> The distinction between "acceptable medical sources" and other health care providers who are not "acceptable medical sources" is necessary for three reasons. First, we need evidence from "acceptable medical sources" to establish the existence of a medically determinable impairment. *See* 20 CFR 404.1513(a) and 416.913(a). Second, only "acceptable medical sources" can give us medical opinions. *See* 20 CFR 404.1527(a)(2) and 416.927(a)(2). Third, only "acceptable medical sources" can be considered treating sources, as defined in 20 CFR 404.1502 and 416.902, whose medical opinions may be entitled to controlling weight. *See* 20 CFR 404.1527(d) and 416.927(d).
>
> * * *
>
> In addition to evidence from "acceptable medical sources," we may use evidence from "other sources," as defined in 20 CFR 404.1513(d) and 416.913(d), to show the severity of the individual's impairment(s) and how it affects the individual's ability to function. These sources include, but are not limited to:

---

[3] That definition identifies various "acceptable medical sources" who can "provide evidence to establish an impairment." *See* 20 C.F.R. § 416.913(a). Nurse practitioners and physical therapists are not included. *Id.*

- Medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists;

\* \* \*

Although the factors in 20 CFR 404.1527(d) and 416.927(d) explicitly apply only to the evaluation of medical opinions from "acceptable medical sources," these same factors can be applied to opinion evidence from "other sources." These factors represent basic principles that apply to the consideration of all opinions from medical sources who are not "acceptable medical sources" as well as from "other sources," such as teachers and school counselors, who have seen the individual in their professional capacity.

\* \* \*

Opinions from "other medical sources" may reflect the source's judgment about some of the same issues addressed in medical opinions from "acceptable medical sources," including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions.

\* \* \*

The fact that a medical opinion is from an "acceptable medical source" is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an "acceptable medical source" because, as we previously indicated in the preamble to our regulations at 65 FR 34955, dated June 1, 2000, "acceptable medical sources" "are the most qualified health care professionals." However, depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an "acceptable medical source" may outweigh the opinion of an "acceptable medical source," including the medical opinion of a treating source. For example, it may be appropriate to give more weight to the opinion of a medical source who is not an "acceptable medical source" if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion.

*See* SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006).  Among other things, this ruling means a nurse practitioner's opinion is not a "medical opinion," is not entitled to controlling weight and cannot establish *the existence of* a medically-determinable impairment.  However, that opinion *can* be used as evidence of the severity of an impairment and how the impairment affects the individual's ability to function.  An ALJ must evaluate the opinion with reference to the same factors that apply to other medical sources, including:

- How long the source has known and how frequently the source has seen the individual;
- How consistent the opinion is with other evidence;
- The degree to which the source presents relevant evidence to support an opinion;
- How well the source explains the opinion;
- Whether the source has a specialty or area of expertise related to the individual's impairment(s), and
- Any other factors that tend to support or refute the opinion.

*See* 20 C.F.R. § 416.927(c).  "In determining what weight to give 'other medical evidence,' the ALJ has more discretion and is permitted to consider any inconsistencies found within the record." *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005).

*Claimant's Credibility.*  "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001).  Accordingly, the court must "defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005).  An ALJ may discount a claimant's subjective complaints if there are inconsistencies in the record as a whole.  *Id*.  "An ALJ who rejects [subjective] complaints must make an express credibility determination explaining the reasons for discrediting the complaints." *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000).  In assessing a claimant's credibility, the ALJ must consider "the claimant's prior work history; daily activities, duration,

frequency, and intensity of pain; dosage, effectiveness and side effects of medication; precipitating and aggravating factors; and functional restrictions." *Medhaug v. Astrue*, 578 F.3d 805, 816 (8th Cir. 2009) (citing *Polaski*, 739 F.2d at 1322). "Other relevant factors include the claimant's relevant work history and the absence of objective medical evidence to support the complaints." *Mouser v. Astrue*, 545 F.3d 634, 638 (8th Cir. 2008) (quoting *Wheeler v. Apfel*, 224 F.3d 891, 894 (8th Cir. 2000)). However, lack of objective medical evidence cannot be the sole reason for discounting a claimant's subjective complaints. *Mouser*, 545 F.3d at 638. An ALJ may discount a claimant's subjective complaints if there are inconsistencies in the record as a whole. *Van Vickle v. Astrue*, 539 F.3d 825, 828 (8th Cir. 2009). The ALJ does not need to discuss each *Polaski* factor as long as he or she "acknowledges and considers the factors before discounting a claimant's subjective complaints." *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009).

When an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, the court should normally defer to the ALJ's credibility determination. *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003). It is not my role to re-weigh the evidence. *See* 42 U.S.C. § 405(g); *see also Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000) ("[I]f, after reviewing the record, [the Court] find[s] that it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Commissioner's] findings, [the Court] must affirm the decision of the Commissioner.") (Citations and quotations omitted).

### B.      *The Record*

The record contains evidence from (a) Linda Gehrke, APRN, Cowles' treating nurse practitioner, (b) David Moore, P.T., a consultative examiner, (c) treating physicians John Piper, M.D., Don Mashka, M.D., Kenneth Pollack, M.D., Lawrence Rettenmaier, M.D., and Arnold Parenteau, M.D., (d) treatment records from various

hospitals and (e) Cowles' subjective testimony. Cowles' arguments focus on the weight the ALJ afforded to the opinions of Ms. Gehrke and Mr. Moore.

*Ms. Gehrke.* Cowles saw Ms. Gehrke as her primary care provider on numerous occasions beginning in 1991. AR 670. Ms. Gehrke's records from February 2005, through 2011, show she treated Cowles for various ailments including low back pain, myofascial and joint pain, migraines and sinus infections. AR 537-77, 669-73, 712-18. Ms. Gehrke also reviewed and initialed treating physicians' records throughout this time. AR 578-641. She prepared a medical report dated May 24, 2010, in which she provided opinions concerning Cowles' impairments. AR 670-73. She stated that Cowles (a) can sit for 20 minutes and then has to get up and move around; (b) can stand for five minutes; (c) can sit and stand for less than two hours each during an 8 hour working day; (d) needs to change positions at will from sitting, standing or walking; (e) sometimes needs to take unscheduled breaks during an 8-hour work day; (f) needs something to steady herself when she walks; (g) is unable to lift and carry even items less than 10 pounds; (h) has significant limitations with repetitive reaching, handling or fingering; cannot occasionally stoop and (i) will miss work more than four times a month. *Id.*

*Mr. Moore.* Mr. Moore performed a consultative examination on January 13, 2010. AR 646-49. He found that Cowles had weakness and some limited mobility in her left hip. AR 646. He noted she was able to tolerate the range of motion testing without increased pain but had some increased pain with the strength testing in her left leg. *Id.* He also noted Cowles was able to ambulate with a fairly straight gait, despite the stiffness in her hips and pelvis. *Id.* Mr. Moore suggested that physical therapy would help with her strength and mobility. AR 647. He concluded Cowles was limited to home and only short distances or duration activities. *Id.*

## C.    The ALJ's Findings

The ALJ determined that Ms. Gehrke's and Mr. Moore's opinions were entitled to little weight.  AR 40-41.  With regard to Ms. Gehrke, the ALJ pointed to various pieces of contradictory evidence in the record, including Ms. Gehrke's own treating notes, to discredit various limitations set forth in her opinion.  AR 40-41.  The ALJ stated:

> Linda Gehrke, ARNP, indicated the claimant had significant pain with limited range of motion. She went on to state the claimant required assistance with tasks due to her lack of stamina. Mrs. Gehrke stated that claimant would be limited to sitting and standing less than two hours in an eight hour day, and could only stand in increments of a few minutes. The claimant was limited in reaching, handling and manipulating and would be absent from work four or more days a month. Additionally, the claimant would require a use of a cane. It should be noted, the claimant did not use a cane, had intact gait and use of the upper extremities. The limitations provided by Mrs. Gehrke are inconsistent with the medical records in general and specifically with Mrs. Gehrke own treating notes. (Exhibit 19F, 23F). Other evidence also contradicts Ms. Gehrke's opinion with respect to the claimant's need for a cane. At the hearing, the claimant denied use of any assistive device, consistent with her own function reports and statement to medical staff. (Exhibits 10E; 25F/2). This inconsistency calls also undercuts Ms. Gehrke's assessment.

AR 40 [emphasis added].

The ALJ also pointed to other records from treating physicians that contradicted Ms. Gehrke's opinion.  The ALJ noted that these records showed Cowles' sinusitis and pain were successfully treated with medications, further casting doubt on Ms. Gehrke's opinion.  The ALJ stated:

> Recent medical records indicate the claimant was treated for sinusitis and improved on medications. Additionally, the claimant was seen for low back pain in mid 2011, the claimant reported that she was stable on a regimen of OxyContin and Perocet. The claimant rated her pain at a seven out of ten. (Exhibit 20F, 22F, 23F, 24F). Interestingly, Arnold Parenteau, M.D. who has examined the claimant many times (including May 2011), noted that her pain was controlled by medication, that any pain symptoms were related only top episodes of "excess activity," and that she had normal gait and

negative straight leg raise. (Exhibit 24F). These observations contradict Ms. Gehrke's opinion, and the claimant's subjective comments.

AR 41 [emphasis added]. The ALJ continued by noting that apart from Ms. Gehrke's and Mr. Moore's opinions, "the record does not contain any opinions from treating or examining physicians indicating that the claimant is disabled or even has limitations greater than those determined in this decision." *Id.* He also stated that that he afforded significant weight to the state agency findings, as they were consistent with the medical evidence when considered as a whole.

Finally, the ALJ discussed Cowles' alleged fatigue and concluded that the medical evidence does not support a finding that Cowles is precluded from work activity due to fatigue. The ALJ stated:

> The claimant has alleged significant fatigue due to her pain, thyroid condition, and the effects of her medication. Ms. Gehrke has commented on her alleged fatigue. She has presented as tired, at times. (Exhibit 23F). Other records show that the claimant felt sleepy when sitting down, or due to sinus pain. (Exhibits 20F/3, 26F/9) The claimant testified that she had fatigue and "fogginess" from her medication, but she told Dr. Parenteau that this was only mild. (Exhibit 22F/5) Many examiners have not observed any fatigue at all. (Exhibits 6F, 7F, 8F, 11F, 20F, 22F, 23F/7, 26F). The claimant's pre-hearing reports remarked on symptoms of fatigue and "foggy" dentation, but she went on the say that she had no difficulty paying attention, concentrating, or following instructions. (Exhibit 10E). Altogether, the evidence suggest that the claimant at time may feel a bit sedated from her pain medication, but she is not precluded from work activity.

*Id.* [emphasis added].

With regard to Mr. Moore, the ALJ determined his opinion was based primarily on Cowles' subjective complaints. AR 40. The ALJ also found contradictions between Mr. Moore's opinion and other medical evidence in the record, including the physical results of the exam and x-rays from other treatment appointments:

> A consultative examination was performed by David D. Moore, II, PT, on January 13, 2010. The claimant described pain in her low back that radiated

into her sacroiliac joint and legs, and she stated that she could only perform some basic housekeeping. On examination, it was noted that claimant had weakness and instability within the left lower extremity and sacroiliac region, but this was only mild and she was able to ambulate normally. She had good hand grip. Physical therapy was recommended. Dr. Moore stated the claimant was limited to "home and is limited to just short distance type activities and short duration activities." Minimal weight is given to the opinion of Dr. Moore as his opinion is based on the subjective complaints of the claimant and not supported by her rather benign physical presentation. (Exhibit 14F) To be fair, Mr. Moore noted that the claimant had some hip stiffness in her gait. That might support some of his opinion, but x-rays have been negative for any hip difficulty. (Exhibit 11F)

*Id.* [emphasis added].

### D.     Analysis

#### i.     Ms. Gehrke's Opinion

The ALJ stated that he gave Ms. Gehrke's opinion minimal weight because her own treatment records, and those of acceptable medical sources, do not support her conclusion that Cowles was limited and disabled.  The ALJ cited to Exhibits 10E, 6F, 7F, 11F, 14F, 19F, 20F, 22F, 23F, 24F, 25F and 26F, as support for his conclusion. Based on my own review of the record, I cannot find that the ALJ's assessment of Ms. Gehrke's opinion is erroneous.  Indeed, many of Ms. Gehrke's treatment records do appear to contradict her opinion.

For example, Ms. Gehrke stated that Cowles was still experiencing significant pain in her low back and legs, despite medications, had limited range of motion and required a cane, such that she would be unable to lift or carry any amount of weight or stoop and would miss more than four day of work per month.  AR 673.  However, the treatment notes – including many from Ms. Gehrke – reveal that Cowles' low back pain was manageable with medication, particularly with regard to her sacroiliac (SI) joints, and that her gait, strength and range of motion were within normal limits.  On January 23, 2007, Ms. Gehrke noted that a straight leg test was negative and Cowles' SI joints

were nontender, however, she had tenderness on the left side of her back. AR 487. Ms. Gehrke performed radiofrequency lesioning on February 23, 2007. AR 488. A month later, Cowles stated her back felt better because of the treatment and Ms. Gehrke noted she had no tenderness in her SI joints or the lateral columns of her back. AR 488, 489. On May 1, 2007, Cowles began taking Zanaflex, which she later stated was helpful. AR 490-91. Ms. Gehrke noted there was some mild tenderness in Cowles' low back but no discrete trigger or palpable taut band. AR 491.

In July 2007, Ms. Gehrke fitted Cowles for a TENS unit to help alleviate low back pain. During the exam for that fitting, Ms. Gehrke noted that Cowles' lower extremity strength was within normal limits but that bending to the side increased the back pain. AR 499. On follow up, Ms. Gehrke noted improvement with the TENS unit, recommended its continued use and also noted decreased tenderness in the SI joint region. AR 502. Cowles stated the TENS unit was of some benefit. *Id.*

Cowles visited the University of Iowa Hospitals and Clinics on January 9, 2008. Treatment records indicate she had good range of motion in her back, normal strength, sensation and reflexes. AR 319. Cowles returned to the Pain Medicine Clinic (PMC) in February 2008, where Ms. Gehrke noted Cowles' physical examination was unchanged from previous visits. AR 508. A trial of Neurontin was started at that time. *Id.* On March 12, 2008, Cowles reported that the Neurontin was helping with her left leg pain but also asked that her OxyCodone be increased. AR 509. Ms. Gehrke recommended that that Cowles continue on Neurontin. *Id.*

In April 2008, Cowles returned to PMC and saw Dr. Parenteau, who noted tenderness in her low back but reported that her straight leg raises were negative, she ambulated without discrete antalgia and the lower extremity strength was intact. AR 511. He also indicated that OxyCodone had been successful in the past and recommended Cowles continue with the medication. *Id.*

Cowles returned to PMC in February 2009, complaining of low back pain. AR 527. Cowles had cancelled a June 3, 2008, appointment because she was feeling better.

*Id.* On March 5, 2009, Cowles returned for a follow-up appointment with Ms. Gehrke, who suggested that she continue with Celebrex and OxyContin because those medications were helping to control her pain. AR 529. Cowles noted that she was using less Percocet and refused to have another radiofrequency lesioning procedure. *Id.*

On March 24, 2009, Cowles had an orthopedic spine consultation. AR 530-32. The physician noted that Cowles had a steady gait, her hips were supple to range of motion other than the left hip being mildly irritable but not stiff on passive internal rotation. AR 530. Cowles' SI joints were not tender and were negative to FABER maneuver. *Id.* The straight leg test was negative, as was the Babinski test. *Id.* Cowles' lumbar spine forward flexion was such that she could reach her ankles. *Id.* The tests showed no significant issues and surgery was not required. AR 531-32.

These records support the ALJ's decision to afford little weight to Ms. Gehrke's opinion on grounds that it is inconsistent with other medical evidence. The record shows that while Cowles did have degenerative disk disease, there was no significant progression of that disease, nor were there other physical issues, dislocations or fractures in her low back. The record also indicates that medications were fairly successful in controlling Cowles' symptoms, so much so that she did not return to see Ms. Gehrke between April 2008 and February 2009. There is also evidence from acceptable medical sources that state Cowles' range of motion and lower extremity strength were within normal limits, which contradicts Ms. Gehrke's opinion.

While Ms. Gehrke opined that Cowles could not sit for longer than twenty minutes without getting up to move around, no provider referenced such a limitation in the contemporaneous treatment notes. Moreover, Cowles sat through the administrative hearing, which lasted for fifty minutes, without requesting a break, even though the ALJ advised her a break would be allowed at any time. AR 53, 50-93. Additionally, as the ALJ noted, Ms. Gehrke stated that Cowles required a cane but Cowles testified that she did not use one. AR 69. Other evidence likewise shows that Cowles had an intact gait and did not use a cane. AR 41, 357, 362, 530, 687, 820.

Finally, Ms. Gehrke opined that Cowles had significant limitations in repetitive reaching, handling or fingering. AR 673. While Cowles did have issues with her elbows, these were treated with injections. AR 496. On July 18, 2007, an x-ray of her left elbow showed no abnormalities or structural damage. AR 498. On September 30, 2008, Cowles' left wrist showed moderate degenerative changes of the first carpometacarpal joint. AR 516. However, she maintained full range of motion in her elbows, forearms, wrists, fingers, and thumbs. AR 515. She had an injection to help alleviate her pain, which was successful for a few weeks but symptoms recurred. AR 519. In October 2008, Cowles was evaluated by Dr. Rettenmaier, who found that she had full range of motion in her elbows, wrists and hands, as well as intact muscles. AR 401. On December 22, 2008, James Friederich, M.D., performed a release surgery on her left first dorsal compartment. AR 523. At both post-operative follow up appointments, Cowles had good motion in her fingers and thumb and had normal sensation. AR 525, 526.

In short, there is no indication in the treatment records that Cowles had any residual limitations or range of motion issues in her elbows or fingers. Instead, the record shows that her symptoms were addressed and the treatments were successful. The ALJ correctly found the medical evidence of record to be inconsistent with Ms. Gehrke's opinion that Cowles would be significantly limited with reaching, handling or fingering.

Because Ms. Gehrke is not an acceptable medical source, the ALJ had more discretion to consider any inconsistencies in the record while evaluating her opinion. *Raney*, 396 F.3d at 1010. I find that the ALJ provided good reasons, supported by substantial evidence on the record as a whole, for affording little weight to that opinion.

### ii. Mr. Moore's Opinion

Cowles argues that Mr. Moore's opinion is supported by his physical examination and substantiated by Ms. Gehrke's treatment records and opinion. The Commissioner argues the ALJ was correct in giving the opinion limited weight because Mr. Moore's

opinion was based on Cowles' subjective complaints and the ALJ did not find those subjective complaints credible. The Commissioner also points to various statements in the record and test results that are inconsistent with Mr. Moore's opinion.

An ALJ may discount a claimant's subjective complaints if there are inconsistencies in the record as a whole and the ALJ's determinations are supported by good reasons and substantial evidence. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Similarly, an ALJ is entitled to find that a medical opinion is not credible if it relies heavily on a claimant's subjective reports. *Kirby*, 500 F.3d at 709. Here, the ALJ gave little weight to Mr. Moore's opinion because (1) the ALJ believed the opinion was based on Cowles' subjective complaints, which the ALJ did not find credible, (2) the physical examination results do not support the opinion and (3) other medical records and test results do not support the opinion. I find the ALJ gave good reasons, supported by substantial evidence, for discounting Mr. Moore's opinion.

On February 4, 2010, Mr. Moore conducted a consultative examination and opined that Cowles' primary problem was weakness and instability in the left lower extremity and SI joint. AR 647. The objective results of the examination indicate that Cowles' left hip immobility or limitations were minor and that she was limited only 10 degrees from full flexion and 20 degrees abduction compared to the right hip. AR 646. Her adduction was equal on both sides. *Id.* She had better lateral flexion on the left side of her back than the right but attributed this to feeling a pulling sensation in her left side when she flexed to the right. *Id.* Her gait was normal and she was able to ambulate. *Id.*

Mr. Moore reported that Cowles had weakness in her back but rated her strength at a 3+ out of 5. *Id.* He suggested that physical therapy would be beneficial and stated that he would be happy to treat her. AR 647. While Mr. Moore indicated that Cowles was limited to home and only short distances or duration activities, he did not explain how this rather-extreme limitation followed from the findings of the physical examination. AR 646-47. The ALJ discussed the inconsistencies between the "rather

benign" results of the physical examination and Mr. Moore's opinion, concluding that Mr. Moore must have based his opinion on Cowles' subjective complaints.  AR 40.

The ALJ also noted inconsistencies between Mr. Moore's opinion and other medical evidence of record.  *Id.*  For example, Cowles was routinely seen for low back pain by a number of physicians and had a number of tests, including MRI scans, x-rays, CT scans and myelograms, performed on her lower back.  AR 389-91, 471-535.  Those scans revealed mild to moderate degenerative disk disease but no other significant problems, fractures or displacements.  AR 513, 520, 521, 522, 533, 534.  In March 2009, Dean Gute, M.D., compared a CT scan of Cowles' low back to a 2008 CT scan and found no significant changes.  AR 533.

Like Ms. Gehrke, Mr. Moore is not an acceptable medical source.  Thus, the ALJ had more discretion to consider any inconsistencies in the record while evaluating his opinion. *Raney*, 396 F.3d at 1010.  In light of the standard by which I must review the evidence, I find the ALJ provided good reasons, supported by substantial evidence, for affording little weight to Mr. Moore's opinion.


### 3.    *Past Relevant Work*

#### A.    *Applicable Standards*

Past relevant work must have (1) occurred in the past fifteen years, (2) been of sufficient duration to enable the worker to learn the job and (3) been substantial gainful activity.  20 C.F.R. § 404.1565(a).  Substantial gainful activity (SGA) is defined as (a) work activity that involves significant physical or mental activities, including work done on a part-time basis or (b) work activity done for pay or profit.  20 C.F.R. § 404.1572.  Ordinarily, earnings will show whether a claimant has engaged in SGA.  20 C.F.R. § 404.1574(b)(2).  For income earned in 1997, a claimant engaged in SGA if he or she averaged $500 or more in earnings per month.  20 C.F.R § 404.1574(b)(2)(Table 1).

### B. Analysis

Cowles argues that the ALJ erred by finding that she had past relevant work as a waitress. She notes that during 1997 her average monthly earnings from waitressing were $529.00, just $29.00 above the presumed SGA level of $500.00 per month. She contends that because the presumed SGA amount was increased to $700.00 two years later in 1999, her work as a waitress in 1997 should not be considered substantial or gainful. She also argues that the documentation and evidence of her work history is inaccurate, inconsistent and does not support a finding that she earned $3,826.50 in 1997, as reported by the Appeals Council and the ALJ.

The Commissioner argues that the evidence in the record is not inaccurate or inconsistent and substantially supports the Appeals Council's and ALJ's findings. The Commissioner asserts that Cowles' monthly average earnings as a waitress in 1997 show she engaged in SGA, meaning the ALJ properly characterized that position as past relevant work.

Cowles completed a work history report in which she stated that she worked as a waitress from February 1997 until August 1997. AR 173. Depending on the precise starting and ending dates, this would amount to either six months or seven months of employment.[4] She represented that she earned approximately $255 per week during that period of time ($5.00 per hour for 8.5 hours per day, six days a week). AR 181. Based on this representation, Cowles would have earned at least $6,630 while working as a waitress in 1997 ($255 per week for 6 months, or 26 weeks). According to other evidence of record, Cowles actually earned $3,704.50 from Valhalla Corp. (for waitressing) during 1997, along with $122.00 from Hardin County for total earnings of $3,826.50. AR 148, 157.

---

[4] For example, mid-February through mid-August would be six months, but February 1 through August 31 would be seven months.

Contrary to Cowles' argument, these figures clearly show that she engaged in substantial gainful activity as a waitress in 1997. Indeed, she admits that even if she was employed for seven full months, her earnings as a waitress averaged $529 per month, which exceeded the $500 minimum SGA threshold for 1997. Doc. No. 12 at 20. While her earnings may have been barely over that threshold, they did exceed the amount established by the Commissioner's regulations to constitute presumed SGA. Cowles cites no authority for the proposition that her employment did not constitute SGA simply because her earnings exceeded the SGA threshold by only a small amount.

Nor do any recognized exceptions apply. This case does not involve earnings received due to "charity rather compensation," as there is no evidence that Cowles' waitressing work was anything but "work activity that involve[d] doing significant physical or mental activities ... for pay or profit." *Thompson v. Sullivan*, 928 F.2d 276 (8th Cir. 1991), *see also* 20 C.F.R. § 404.1572. Likewise, there is no evidence that Cowles work as a waitress was "sheltered" employment. *See, e.g., Lamarino v. Heckler*, 795 F.2d 59, 60 (8th Cir. 1986) (discussing employment that is "especially set up for severely impaired persons") (quoting 20 C.F.R. § 404.1574(b)(4)). The ALJ's (and the Appeal Council's) finding that Cowles' work as a waitress in 1997 constituted SGA – and thus qualified as past relevant work – is supported by substantial evidence on the record as a whole.

Cowles also argues that remand is required because the record contains inconsistent information about her earnings. She relies on the apparent inconsistency I referenced above, wherein her earnings from waitressing during 1997 should have far exceeded the $3,704.50 that was reported by the Social Security Administration. AR 148, 181. She notes that based on her self-reported hours and wages, she would have earned $3,704.50 in less than fifteen weeks, not over the course of six or seven months. Cowles also notes that while she reported working for the sheriff's department in 1996 and 1998, other evidence shows earnings from that employment in 1997, as well. AR

157, 173. Because of these various, alleged inconsistencies, Cowles contends remand is necessary for further factual investigation.

This argument is baseless, as any alleged error or inaccuracy is plainly harmless. *See, e.g., Van Vickle v. Astrue*, 539 F.3d 825, 830 (8th Cir. 2008) (error is harmless if there is no indication that the ALJ would have decided the claim differently). With regard to her earnings as a waitress, Cowles complains that if she earned $3,704.50 during seven months in 1997, then her average monthly earnings were barely above the SGA level. Yet she also argues that the $3,704.50 figure must be inaccurate because she actually earned *more* than that amount. Because earning $3,704.50 in 1997 already puts Cowles above the SGA threshold, evidence that this figure is understated would not change the analysis.

As for her employment with the sheriff's department, Cowles earnings from that employment were minimal and were not considered as part of the SGA analysis. She earned only a few hundred dollars from that employment in both 1996 and 1996, along with $122.00 in 1997. AR 148-49. Any alleged discrepancy as to whether she worked for the sheriff's department during 1997 is irrelevant to the disability determination.

Substantial evidence supports the ALJ's finding that Cowles had past relevant work as a waitress because she performed that job at the SGA level in 1997. Remand is not necessary.

## VI.    CONCLUSION

After a thorough review of the entire record and in accordance with the standard of review I must follow, I conclude that the Commissioner's determination that Cowles was not disabled within the meaning of the Act is supported by substantial evidence in the record. Accordingly, the final decision of the Commissioner is **affirmed**. Judgment shall be entered in favor of the Commissioner and against Cowles.

**IT IS SO ORDERED.**

**DATED** this 24th day of April, 2015.

_____
LEONARD T. STRAND
UNITED STATES MAGISTRATE JUDGE